UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KINDRED HEALTHCARE, INC. and GENTIVA HEALTH SERVICES, INC.,

Plaintiffs,

v.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

Defendant.

Civil Action No. 3-15-cv-713-GNS-

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiffs, Kindred Healthcare, Inc. ("Kindred") and Gentiva Health Services, Inc. ("Gentiva") (collectively, the "Kindred Policyholders"), by their undersigned counsel, bring this action against Defendant, Travelers Casualty and Surety Company of America ("Travelers"), and in support thereof, allege as follows:

## I. NATURE OF THIS ACTION

1. This insurance coverage action arises out of Travelers' failure to pay amounts due under an insurance policy Travelers sold to Gentiva, including defense and settlement costs arising out of certain claims made against Gentiva by a former employee, Vicky White, on behalf of herself and the United States government. Those claims asserted wrongful discharge, claims under Tennessee common law, and violations of the federal False Claims Act (the "White Action"). Travelers has refused to reimburse defense costs and settlement payments incurred by the Kindred Policyholders in defending against the White Action that are owed by Travelers under its insurance policy. Travelers acknowledged that the White Action alleges a covered claim for a Wrongful Employment Action, as defined by its policy. Travelers continues to

refuse, however, to reimburse Gentiva for the costs Gentiva incurred in defending against the portion of the White Action that Travelers admits is covered. In addition, Travelers has not agreed to reimburse Gentiva for any of the settlement amount of the White Action.

2. Accordingly, the Kindred Policyholders bring this insurance coverage action against Travelers for declaratory judgment, damages for breach of contract, statutory and exemplary damages, and attorneys' fees for violations of the Kentucky Unfair Claims Settlement Act and common law bad faith.

## II. THE PARTIES

3. Plaintiff, Kindred Healthcare, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 680 S. 4th Street, Louisville, Kentucky 40202.

4. Plaintiff, Gentiva Health Services, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 680 S. 4th Street, Louisville, Kentucky 40202, and is a wholly-owned subsidiary of Kindred.

5. Defendant, Travelers Casualty and Surety Company of America is an insurance company organized and existing under the laws of the State of Minnesota with its principal place of business located at 485 Lexington Avenue, New York, NY 10017.

## III. JURISDICTION AND VENUE

6. The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Travelers by virtue of Travelers' business activities within the Commonwealth of Kentucky, including the sale of insurance

policies in Kentucky and its handling of claims made by policyholders located in Kentucky, including the subject of this civil action.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2), in that a substantial part of the events or omissions giving rise to the Kindred Policyholders' claims occurred within this District.

## IV. THE INSURANCE POLICY

9. Gentiva purchased from Travelers Employment Practices Liability Policy No. 105494726 for the period September 15, 2012 to September 15, 2013, with limits of liability in the amount of $10,000,000 and a retention of $750,000 for each Claim (the "Policy"). A copy of the Policy is attached hereto as **Exhibit A**.

10. The Policy obligates Travelers to "pay on behalf of the Insured, Loss for any Employment Claim first made during the Policy Period, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a Wrongful Employment Practice."

11. The Policy defines the term "Loss," in part, as follows:

> Defense Expenses and money which an Insured is legally obligated to pay as a result of a Claim, including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiple damages; prejudgment and postjudgment interest; and legal fees and expenses of a Claimant or Outside Claimant awarded pursuant to court order or judgment.

12. The Policy defines the term "Defense Expenses" as "reasonable and necessary legal fees and expenses incurred by the Company or the Insured, with the Company's consent, in the investigation, defense, settlement and appeal of a Claim, including but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds (without the obligation to furnish such bonds) regarding such Claim . . ."

13. The Policy defines the term "Employment Claim" to include "a civil proceeding commenced by service of a complaint or similar pleading . . . against an Insured by or on behalf of or for the benefit of a Claimant, or against an Insured Person serving in an Outside Position by or on behalf of or for the benefit of an Outside Claimant, for a Wrongful Employment Practice…"

14. The Policy defines the term "Wrongful Employment Practice" to include both "Retaliation" and "Wrongful Termination," among other practices.

15. The Policy defines the term "Retaliation" as "any actual or alleged Wrongful Termination or other adverse employment action against a Claimant or Outside Claimant on account of such Claimant's or Outside Claimant's exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any governmental agency alleged violations of the law, or on account of the Claimant or Outside Claimant having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law."

16. The Policy defines the term "Wrongful Termination" as "the actual, alleged or constructive termination of an employment relationship between a Claimant and the Insured Organization . . . in a manner or for a reason which is contrary to applicable law or public policy, or in violation of an Employment Agreement."

17. The Policy provides "Reimbursement" liability coverage rather than "Duty-to Defend" liability coverage, which places the duty to defend on Gentiva, rather than Travelers.

18. The Policy contains an endorsement entitled, "Bordereau Claims Reporting with Threshold and Insured's Duty to Defend," which amends the "Claim Defense" provision of the Policy to provide, in part, as follows:

1. As indicated in ITEM 7 of the Declarations, reimbursement coverage is provided with respect to the Liability Policy. Further, the following applies to this Liability Coverage:

a. the Company will have no duty to defend any Claim covered by a Liability Coverage. It will be the duty of the Insured to defend such Claims

* * *

With respect to any Claim for which the Insured reasonably believes or anticipates the total amount of Loss, including Defense Expenses, will exceed $187,500.00, the Company will have the right to participate with the Insured in the investigation, defense and settlement, including the negotiation of a settlement of any Claim that appears reasonably likely to be covered in whole or in part by such Liability Coverage and the selection of appropriate defense counsel; and

b. upon written request, the Company will advance Defense Expenses with respect to such Claim. Such advanced payments by the Company will be repaid to the Company by the Insureds severally according to their respective interests in the event and to the extent that the Insureds are not entitled to payment of such Defense Expenses under such Liability Coverage. As a condition of any payment of Defense Expenses under this subsection, the Company may require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of any Defense Expenses paid to or on behalf of any Insured if it is finally determined that any such Claim or portion of any Claim is not covered under such Liability Coverage.

19. With regard to Allocation, the Policy provides as follows:

If Reimbursement coverage is indicated in ITEM 7 of the Declarations and there is a Claim under any Liability Coverage in which the Insureds who are afforded coverage for such Claim incur an amount consisting of both Loss that is covered by such Liability Coverage and also loss that is not covered by such Liability Coverage because such Claim includes both covered and uncovered matters or covered and uncovered parties, the Insureds and the Company agree to use their best efforts to determine a fair and proper allocation of all such amounts. In making such a determination, the parties will take into account the relative legal and

> financial exposures of, and relative benefits obtained in connection with the defense and settlement of the Claim by the Insured Persons, the Insured Organization, and others not insured under the applicable Liability Coverage. In the event that an allocation cannot be agreed to, then the Company will be obligated to make an interim payment of the amount of Loss which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of the applicable Liability Coverage and applicable law.

## V. THE CLAIMS AGAINST GENTIVA IN THE WHITE ACTION

20. On September 8, 2010, Vicky White, on behalf of herself and the United States of America, filed a Complaint in camera and under seal against Gentiva in the United States District Court for the Eastern District of Tennessee at Knoxville (the "White Action"). A copy of the Complaint in the White Action is attached hereto as **Exhibit B**.

21. Ms. White brought the White Action under the federal False Claims Act (the "FCA"), 31 U.S.C. §§ 3729, *et. seq.*, as amended, to recover damages and civil penalties from Gentiva on behalf of the United States of America (the "FCA Fraud Claims"), and under the federal False Claims Act, 31 U.S.C. § 3730(h), the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304, and Tennessee common law to recover damages from Gentiva on her own behalf (the "Employment Claims").

22. The FCA Fraud Claims allege that Gentiva violated the FCA by submitting false claims or causing false claims to be submitted for reimbursement for home health services through various fraudulent schemes concerning medical necessity, therapy thresholds, and homebound status.

23. The Employment Claims allege that Ms. White was terminated in retaliation for raising concerns regarding Gentiva's alleged FCA violations in violation of the FCA's anti-retaliation provision and various state laws.

24. The White Action seeks a variety of forms of relief on behalf of the United States of America with regard to the FCA Fraud Claims, as well as relief on behalf of Ms. White with regard to the Employment Claims.

25. With the consent of Travelers, Gentiva settled the Employment Claims for $450,000. Separately, Gentiva settled the FCA Fraud Claims for $300,000.

26. On August 26, 2015, after seeking the consent of Travelers and receiving no objection, Gentiva settled for $750,000 Ms. White's claims for attorneys' fees incurred in pursuing the White Action.

27. Travelers has agreed that the settlement of the Employment Claims is covered under the Policy, as are a portion of Gentiva's Defense Expenses and the plaintiff's attorneys' fees, but it has refused to fund the full amounts in excess of the Policy's $750,000 retention.

## VI. TRAVELERS' INCORRECT POSITION WITH RESPECT TO DEFENSE EXPENSES AND ALLOCATION UNDER THE POLICY

28. Gentiva timely notified Travelers of the White Action.

29. Gentiva retained attorneys from Bass Berry & Sims ("BB&S") at reasonable hourly rates for the purpose of defending Gentiva against the White Action.

30. By letter dated August 27, 2013, Travelers acknowledged that the Policy was triggered for Gentiva by the White Action. Travelers also acknowledged that the Employment Claims alleged "Wrongful Termination," and that "[s]uch conduct, if proven to be true, "may fall within the parameters of a Wrongful Employment Practice as defined by the [P]olicy." As to the FCA Fraud Claims, however, Travelers reserved its rights to preclude coverage and to seek to allocate Defense Expenses.

31. In its August 27, 2013 letter, Travelers consented to Gentiva's choice of defense counsel at BB&S. Travelers, however, unilaterally asserted that the rates BB&S charged were

unreasonable. Travelers took the improper position that it would only reimburse Gentiva at lower hourly rates than those actually charged by BB&S and paid by Gentiva, and Travelers wrongfully asserted it would not be responsible for any amount charged in excess of those lower rates. Travelers did not suggest alternative defense counsel for Gentiva that would charge these arbitrarily chosen rates.

32. Travelers has asserted that Gentiva "agreed" to the hourly rate schedule set forth in Travelers' August 27, 2013 letter, but it has refused to provide any evidence of an agreement. Gentiva denies it ever agreed to the rate schedule proposed by Travelers.

33. Gentiva submitted to Travelers the Defense Expenses it has incurred in defense of the White Action consisting of the invoices charged by BB&S and paid by Gentiva.

34. BB&S could not and did not separately bill its work defending against the Employment Claims and the defense of the FCA Fraud Claims because those portions of the case were inextricably intertwined.

35. By letter dated July 16, 2015, Travelers confirmed receipt of the BB&S bills dating from October 7, 2013 through April 7, 2015.

36. In its July 16, 2015 letter, Travelers improperly applied its unilaterally chosen hourly rates for BB&S to reduce the total amount of Defense Expenses, thereby considering for reimbursement under the Policy only approximately 80% of the Defense Expenses that were actually charged and paid.

37. Travelers also advised that its "review of the billing details indicates that the majority of Defense Expenses incurred to date apply to the defense of the [FCA Fraud Claims]," and that it applied a 25% allocation of "total Defense Expenses incurred on the covered [Employment Claims]." Accordingly, Travelers advised that it would allocate to the

Employment Claims only 25% of the Defense Expenses (which it had already reduced by 20% based on hourly rates). Travelers contends that all other Defense Expenses paid by Gentiva were either "unreasonable" or related to the FCA Fraud Claims, and cannot be applied against the Policy's $750,000 retention.

38. Travelers has failed to engage with Gentiva in a cooperative allocation of liability and costs as between the Employment Claims and the FCA Fraud Claims. Travelers states its allocation is based on a "line-by-line" review of BB&S invoices, but it has refused to provide Gentiva with this invoice review. Travelers refuses to consider an allocation based on the relative values of the Employment Claims and the FCA Fraud Claims.

39. This unilateral effort at allocation by Travelers is inconsistent with the good faith and cooperative approach specified in the Policy language regarding both Claim Defense and Allocation. The Allocation section of the Policy provides that where amounts are incurred for a claim including both covered and uncovered matters, "the Insureds and the Company agree to use their best efforts to determine a fair and proper allocation of all such amounts," by taking "into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the Claim by the Insured Persons, the Insured Organization, and others not insured under the applicable Liability Coverage." The Allocation section of the Policy does not contemplate a line-by-line review of invoices, but instead requires the parties to consider the legal merits and financial impact of the claims being defended.

40. Here, where the settlement value of the Employment Claims was greater than the settlement value of the FCA Fraud Claims and thus actually cost Gentiva more to resolve, it is clear that the legal and financial exposure to Gentiva of the Employment Claims was greater than its exposure to the FCA Fraud Claims. Similarly, in considering the relevant benefits provided

to Gentiva from the defense efforts, the Employment Claims had demonstrably greater merit and became the emphasis of the litigation as it proceeded forward, given that all of the Employment Claims survived dismissal, while all but one of the fraud-based claims were dismissed.

41. All of the costs incurred by Gentiva in defending the White Action constitute covered Defense Expenses under the Policy because all of the work performed is interrelated to the covered Employment Claims.

42. Despite the foregoing, Travelers will not even consider an allocation approach that is based on the actual relative settlement values of the claims.

43. Travelers' position with regard to hourly rates is also not supported by the language of the Policy. The Policy assigns the duty to defend and the right to select defense counsel to Gentiva. The Claim Defense section gives Travelers only the right to participate with Gentiva in selection of appropriate defense counsel, and here, Travelers consented to the choice of counsel. Contrary to Travelers' suggestion, the Claim Defense section does not give Travelers the unilateral right to impose hourly rate limits lower than those actually charged and paid.

44. By letters dated July 28, 2015, August 10, 2015 and August 19, 2015, Gentiva rejected Travelers' position that Travelers is not responsible for defense costs charged in excess of the hourly rate schedule unilaterally developed by Travelers, as well as the 25%/75% allocation proposed by Travelers.

45. By email dated August 12, 2015, Travelers restated its position that it would only "credit 25% of reasonable Defenses Expenses incurred by Gentiva at the maximum rates set forth in Travelers July 1[6], 2015 letter to Gentiva towards the Policy's $750,000 retention."

46. Because of the unreasonable allocation positions taken by Travelers, Gentiva has incurred covered amounts in excess of the Policy's $750,000 retention, as to which Travelers has

refused to provide any indemnity to Gentiva, all in violation of the Policy language and Travelers' obligation of good faith and fair dealing.

**COUNT ONE - DECLARATORY JUDGMENT**

47. The Kindred Policyholders hereby repeat and re-allege each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

48. The Kindred Policyholders have an actual and present controversy with Travelers regarding Travelers' liability under its Policy to pay covered Defense Expenses arising out of the White Action. It is therefore appropriate for this Court to declare the rights of the parties.

49. This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.

50. The Kindred Policyholders are entitled to have the Policy interpreted in a reasonable manner that maximizes the available insurance coverage.

51. Under the circumstances, it is necessary and appropriate for the Court to declare the Kindred Policyholders' rights and Travelers' obligations under the Policy. Declaratory relief from this Court will resolve outstanding issues between the Kindred Policyholders and Travelers' regarding the Kindred Policyholders' rights under the Policy.

**COUNT TWO - BREACH OF CONTRACT**

52. The Kindred Policyholders hereby repeat and re-allege each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

53. The Policy is a valid contract.

54. In return for premiums paid, Travelers agreed to pay for all Loss, including Defense Expenses, for any Employment Claim for a Wrongful Employment Practice.

55. The settlement of the Employment Claims in the White Action, as well as Ms.

White's claim for attorneys' fees, constitutes a covered Loss for an Employment Claim for a Wrongful Employment Practice.

56. Additionally, the expenses incurred in defending against the covered Employment Claims alleged in the White Action qualify as covered Defense Expenses under the Policy.

57. The Kindred Policyholders have complied and/or substantially complied with all of the terms, provisions, and conditions precedent of the Policy.

58. The amount of Defense Expenses and covered Loss at issue in White Action exceeds the applicable retention in the Policy, triggering Travelers' payment obligation.

59. Travelers has breached its contractual obligations to Gentiva by refusing to properly allocate the Defense Expenses incurred in the defending the White Action.

60. Travelers has further breached its contractual obligations to Gentiva by unilaterally imposing hourly rate limits on defense counsel Gentiva chose and to which Travelers consented.

61. Travelers has further breached its contractual obligations by failing to make an interim payment consisting of those amounts of Loss in excess of the retention as to which Travelers agrees there is not a dispute until a final amount is agreed upon or determined by law.

62. As a result of Travelers' breach of contract, the Kindred Policyholders have suffered damages.

WHEREFORE, the Kindred Policyholders request that the Court enter judgment against Travelers for actual money damages in excess of $75,000, in an amount to be determined at trial, for Travelers' breach of the Policy, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, attorney's fees and costs, and other such relief the court deems just and proper.

**COUNT THREE – BAD FAITH UNDER THE KENTUCKY UNFAIR CLAIMS SETTLEMENT ACT AND COMMON LAW**

63. The Kindred Policyholders hereby repeat and re-allege each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

64. Travelers' unreasonable refusal to pay policy proceeds to Gentiva, its failure to allocate Defense Expenses fairly arising out of the White Action, and its unilateral imposition of hourly rate limits on defense counsel, constitute violations of the Kentucky Unfair Claims Settlement Practices Act, KRS § 304.12-230, *et. seq.*, and also constitute bad faith insurance practices under the common law.

65. Travelers is obligated under the terms of the Policy to pay the full amount of Loss in excess of the Policy's retention, including Defense Expenses, settlement amounts, and plaintiffs' attorneys' fees incurred by the Kindred Policyholders that relate to the Employment Claims. Here, Travelers has failed to pay any amount, and it lacks a reasonable basis in law or fact for failing to do so. Additionally, Travelers either knows there is no reasonable basis for its positions, or has acted with reckless disregard for whether such a basis exists. Travelers' breaches of its duties are outrageous and not fairly debatable.

66. Travelers' improper and arbitrary positions with respect to defense counsel rates and allocation as to the Kindred Policyholders' claim are outrageous and the product of either intentional misconduct or reckless indifference to the rights of the Kindred Policyholders. Among other things, Travelers has failed to apply its Policy language to the facts in good faith; adopted strained and unreasonable interpretations of its Policy language while disregarding more reasonable interpretations that favor its policyholders; baselessly objected to the rates of defense counsel to which it consented and reasonable defense costs incurred in a successful defense effort; and persistently sought to avoid applying an allocation that would require it to make any

payment under the Policy.

67. Travelers has knowledge of, or has recklessly disregarded, the fact that its actions are unreasonable.

68. Travelers' positions and unreasonable actions in refusing to pay the Kindred Policyholders' claim as requested violate the implied covenant of good faith and fair dealing and Kentucky law.

69. As a result, the Kindred Policyholders are entitled to all available rights and remedies permitted for the bad faith conduct of Travelers under the Kentucky Unfair Claims Settlement Act, and the common law, including punitive damages, attorney's fees, statutory penalties, interest, and costs.

WHEREFORE, the Kindred Policyholders request that the Court enter judgment requiring Travelers to pay the Kindred Policyholders all monetary damages suffered by the Kindred Policyholders caused by Travelers' bad faith conduct, including without limitation, compensatory damages, consequential damages, punitive damages, prejudgment interest, post-judgment interest, statutory penalties, penalty interest, attorneys' fees and costs, and other such relief the court deems just and proper.

Respectfully submitted,

/s/ Luke E. Debevec

John N. Ellison, Esq. (*pro hac vice motion pending*)
Luke E. Debevec, Esq. (*pro hac vice motion pending*)
REED SMITH LLP
Three Logan Square
1717 Arch Street Suite 3100
Philadelphia, PA 19103
215-851-8100
Fax 215-851-1420
jellison@reedsmith.com
ldebevec@reedsmith.com
*Counsel for Kindred Healthcare, Inc. and Gentiva Health Services, Inc.*

Dated: September 8, 2015